Filed 3/24/16

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN MICHAEL KELLY,<br><br>Defendant and Appellant. | F069270<br><br>(Super. Ct. No. F12910447)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Arlan L. Harrell, Judge.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part 2.

# INTRODUCTION

Does the "One Strike" law (Pen. Code,[1] § 667.61) apply to a defendant who kidnaps his victim immediately after the completion of forcible sex offenses against her? We conclude it does.

Defendant John Michael Kelly was charged with two counts of forced oral copulation (§ 288a, subd. (c)(2)(A), counts 1 and 2) and one count of aggravated kidnapping (§ 209, subd. (b)(1), count 3). Special circumstances of aggravated kidnapping (§ 667.61, subd. (d)(2)) and simple kidnapping (§ 667.61, subd. (e)(1)) were also alleged as to counts 1 and 2 under the One Strike law.

A jury convicted defendant of both counts of forcible oral copulation (§ 288a, subd. (c)(2)(A)), and the lesser included offense of simple kidnapping (§ 207, subd. (a)) as to count 3. The jury found true the aggravated kidnapping circumstance on count 1, but as to the same count, found not true the simple kidnapping circumstance. The trial court declared a mistrial as to the special circumstances alleged on count 2 after the jury was unable to reach a unanimous decision on these allegations. Defendant was sentenced to an indeterminate term of 25 years to life on count 1, with a consecutive eight-year determinate sentence on count 3, and an eight-year determinate sentence for count 2, imposed concurrent to count 1.

On appeal, defendant contends: (1) the evidence was insufficient to support the aggravated kidnapping circumstance; (2) the jury committed reversible error in finding true the aggravated kidnapping circumstance, but finding not true the lesser included circumstance of simple kidnapping; and (3) the trial court erred in sentencing defendant for the aggravated kidnapping circumstance and the substantive offense of simple kidnapping because he was punished twice for the same act of kidnapping. We agree with defendant's third claim and will order the abstract of judgment modified. In all other respects, the judgment is affirmed.

---

[1]All undefined statutory references are to the Penal Code unless otherwise indicated.

# FACTS

*Prosecution's Case*

On December 24, 2012, at approximately 5:45 p.m., Dulce R. was walking home on M Street in Fresno. As she was walking, she observed a gray Ford Mustang drive by her twice. Unfamiliar with the area, Dulce reached a dead end on M Street and Heaton and turned around. When she turned around, she saw a man, defendant, walking toward her. Dulce crossed the street and defendant crossed as well. Defendant caught up to her and pushed her six to eight steps backwards to a grassy area by the side of a warehouse.

Dulce, who speaks essentially no English, told defendant, "No, please." Defendant told her to be quiet and not to yell. Dulce thought he wanted money and offered defendant $20 and her cell phone. Defendant threw her phone and purse on the ground and pushed her onto the ground. He pushed Dulce's shirt and bra up and began kissing her mouth and breasts. She repeatedly told defendant "no." He pulled down Dulce's pants and orally copulated her. Defendant then stood up, pulled Dulce to her knees by her arm and her hair, and forced her to orally copulate him.

After 10 minutes, defendant grabbed Dulce by the arm and forced her into his vehicle, a gray Ford Mustang. He threw her purse in the backseat of his car and drove to the Bag-O-Bag liquor store in Fresno. Defendant left Dulce in the car while he went inside. As soon as he was inside, Dulce fled to a nearby Walgreens, where she passed out. When she awoke, police and emergency personnel had arrived.

Dulce showed Officer Ana Chavarin of the Fresno Police Department the route she took to walk home and the location where the incident occurred. Chavarin observed the grass where the incident occurred appeared to be flattened. Police sighted defendant's Mustang the next day. The vehicle was stopped and Dulce's purse was recovered from the backseat.

A criminalist determined defendant's DNA was on Dulce's lower lip and right breast.

*Defense's Case*

Defendant testified in his own defense.  He claimed he was driving home when he saw Dulce walking on M street and Ventura.  Believing she was a sex worker, he drove by her again at Tulare Street and Van Ness.  Defendant drove around the block, parked his car, and jogged over to her.  He offered Dulce $20 for sex and claimed she agreed.  They walked to a grassy area 10 feet from the street, by the side of a warehouse.

Defendant and Dulce began kissing.  He claimed he felt like it was love at first sight and he believed he was making her his girlfriend.  Defendant performed oral sex on Dulce, and she performed oral sex on him.  He maintained it was consensual.

After 10 minutes, Dulce suggested they go to her house and defendant agreed.  They walked arm in arm to defendant's car, like a couple.  Dulce was not sure how to get to her house so they decided to go to defendant's home.  As they were driving, she received a phone call and began to act anxious.  Dulce asked defendant to stop at a liquor store and gave him money to purchase beer.  When he came out of the store, she was gone.  Defendant was not surprised Dulce left because she was acting nervous during the car ride.  Defendant found Dulce's purse in his car after he drove home.  Unable to find any identification in her purse, he took the money he found inside.

## DISCUSSION

### 1.     The Aggravated Kidnapping Circumstance

The jury found defendant guilty of two counts of forcible oral copulation, a felony sex offense under section 667.61, subdivision (c).  As to count 1, the jury also found true an aggravated kidnapping circumstance (§ 667.61, subd. (d)(2)).

On appeal, defendant argues the circumstance does not apply because the prosecutor elected to proceed on one of two possible theories of kidnapping:  defendant's movement of the victim to the liquor store.  He asserts this act is insufficient to support the circumstance because the kidnapping did not occur until after the acts of forcible oral copulation concluded.  We disagree.

4.

Defendant was sentenced to an indeterminate term of 25 years to life pursuant to the One Strike law, an alternative sentencing scheme applicable to eligible felony sex offenses (*People v. Jones* (1997) 58 Cal.App.4th 693, 709). The scheme provides a sentence of 15 or 25 years to life in prison where a defendant is convicted of a sex crime enumerated within subdivision (c) of section 667.61, and certain factual allegations are found true, most of which concern the manner in which the offense was committed (§ 667.61, subds. (d), (e)).

We agree with defendant's assertion the prosecutor elected to prove the aggravated kidnapping circumstance based on defendant's act of moving the victim by driving her 3.7 miles to a liquor store. At trial, the prosecutor presented evidence of two acts of kidnapping. The first was defendant's initial act of forcing the victim to the grassy area by the warehouse. The second was defendant's act of driving the victim to the liquor store.

In closing argument, the prosecutor emphasized to the jury defendant's act of driving the victim to a liquor store constituted the aggravated kidnapping circumstance. Pursuant to section 667.61, subdivision (d)(2), an aggravated kidnapping circumstance requires proof (1) the defendant kidnapped the victim; and, (2) "the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c)." The prosecutor argued defendant substantially increased the risk of harm to the victim when he moved her to the liquor store because she was alone with defendant in his car, unable to scream for help, and her only means of escape was to exit a moving vehicle.

Where a pleading charges a defendant with one criminal act but the evidence tends to show more than one such act, the prosecutor must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act. (*People v. Thompson* (1995) 36 Cal.App.4th 843, 850.) Here, the prosecutor elected to prove the aggravated

kidnapping circumstance based on defendant's act of moving the victim to the liquor store, not the slight movement of the victim from the sidewalk to the grassy area by the warehouse. Although he also requested a unanimity instruction, the prosecutor's statements in closing argument were a clear and direct election, and it can be reasonably inferred the instruction was requested as a precautionary measure.

Based on this theory, defendant argues there is insufficient evidence to support the aggravated kidnapping circumstance because the kidnapping did not occur until after the sexual offense had concluded. He contends the circumstance only applies where a qualifying sex offense occurs in or during the commission of a kidnapping.

*People v. Jones*, *supra*, 58 Cal.App.4th 693 is instructive on the issue. In *Jones*, the defendant raised a challenge to the sufficiency of the evidence supporting an aggravating kidnapping circumstance. (*Id*. at pp. 712-713.) The defendant argued the circumstance applied only if he kidnapped the victim with the specific intent to commit a sexual offense, but there was insufficient evidence of such intent. (*Id*. at p. 716.) The Fourth Appellate District disagreed, reasoning the express language of subdivision (d)(2) of section 667.61 does not require specific intent. (*Jones*, at p. 717.) The court further opined "[it] would appear the circumstance would apply if the defendant commits the sexual offense, then, as an afterthought, kidnaps the victim …." (*Ibid*.)

Although the issue in *Jones* was whether the aggravated kidnapping circumstance requires specific intent, rather than whether a sex offense must occur during the commission of a kidnapping, the reasoning is persuasive. Nothing in section 667.61, subdivision (d)(2) provides the circumstance applies only where a defendant commits a sex offense, in or during the commission of a kidnapping. (See *People v. Luna* (2012) 209 Cal.App.4th 460, 467 [analyzing a similar provision, simple kidnapping (§ 667.61, subd. (e)(1)), and holding similar to aggravated kidnapping, simple kidnapping does not require the defendant commit the sex offense during a kidnapping].)

Unlike aggravated kidnapping (§ 667.61, subd. (d)(2)), other circumstances within the same statutory scheme explicitly provide the qualifying sex offense must occur during the commission of the circumstance. Section 667.61 provides for an increased penalty where the defendant: "inflicted aggravated mayhem or torture on the victim or another person in the commission of the present offense …" (*id.*, (d)(3)), "committed the present offense during the commission of a burglary …" (*id.*, (d)(4)), "used a dangerous or deadly weapon … in the commission of the present offense …" (*id.*, (e)(3)), tied up or bound "the victim or another person in the commission of the present offense" (*id.*, (e)(5)), or "administered a controlled substance to the victim in the commission of the present offense …" (*id.*, (e)(6)). In drafting section 667.61, we presume the Legislature was aware of the construction of the phrase "in the commission of," and because the term was not employed in subdivision (d)(2), we infer the omission was intentional. (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 576 ["When the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded'"].) We will, therefore, not read the phrase into subdivision (d)(2) of section 667.61.

We also observe the *Jones* court's interpretation of the kidnapping circumstance is in accord with the purpose of the statute: to ensure serious sex offenders receive lengthy prison sentences upon their first conviction when their crimes are committed under circumstances elevating their victim's vulnerability. (*People v. Palmore* (2000) 79 Cal.App.4th 1290, 1296.) It would be absurd to construe the statute to apply only where a kidnapping precedes a sexual offense when the risk of harm to a victim who is sexually assaulted and then kidnapped is no less substantial. Indeed, had the victim here not escaped before defendant took her to his home, we can only surmise what additional harm would have been inflicted upon her.

However, even if the Legislature had intended the circumstance apply only to sexual offenses which occur during the commission of kidnapping, the circumstance

7.

would still apply here. The Sixth Appellate District explained in *People v. Alvarado* (2001) 87 Cal.App.4th 178, 189-190, in interpreting statutes that provide enhanced punishment for conduct performed during the commission of a felony, such as section 667.61, courts look to felony-murder cases to define the phrase "in the commission of." For purposes of felony murder, a felony sex offense has been held to be continuous as long as the victim has not been disposed of or remains confined (*People v. Guzman* (1988) 45 Cal.3d 915, 952), until the perpetrator reaches a place of temporary safety (*People v. Portillo* (2003) 107 Cal.App.4th 834, 843), or as long as the perpetrator maintains control over the victim (*People v. Castro* (1994) 27 Cal.App.4th 578, 586).

We need not decide how the temporal duration of a sex crime must be measured for purposes of aggravated kidnapping because the facts of the instant case plainly warrant application of the circumstance. Although the physical act of forcible oral copulation concluded when defendant kidnapped the victim, the offense had not. Rather than releasing the victim or fleeing the scene of the crime, defendant forced her into his vehicle and drove her to a liquor store. Thus, even if the aggravated kidnapping circumstance implicitly required a sex offense occur during or in the commission of kidnapping, the circumstance would apply here.

Based on the foregoing interpretation, we conclude substantial evidence supports the jury's finding on the aggravated kidnapping circumstance. Aggravated kidnapping, pursuant to section 667.61, subdivision (d)(2), applies where (1) the perpetrator is convicted of a sexual offense specified in subdivision (c) of the statute; (2) the perpetrator kidnapped the victim of the offense; and, (3) the movement of the victim substantially increased the risk of harm to the victim above that necessarily inherent in the underlying offense.

Defendant was convicted of two acts of forcible oral copulation against the victim, a sex offense specified in subdivision (c) of section 667.61. After the sexual assault, he forced the victim into his vehicle and drove her to a liquor store. Kidnapping requires the

8.

People to prove: (1) the victim was moved a substantial distance; (2) the movement was accomplished by use of physical force or fear; and, (3) the movement was nonconsensual. (*People v. Jones* (2003) 108 Cal.App.4th 455, 462; *People v. Martinez* (1999) 20 Cal.4th 225, 237 [a substantial distance must be more than trivial or slight].) Because the victim here testified defendant forced her into his vehicle, despite her repeated pleading, and other evidence demonstrated defendant drove the victim a substantial distance, 3.7 miles, to the liquor store, this element has been satisfied.

The last element, which considers the increased risk of harm to the victim, is also satisfied where there is substantial asportation of the victim. (*People v. Jones*, *supra*, 58 Cal.App.4th at p. 713.) The jury may also consider the defendant's "'decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes.'" (*Ibid.*)

As noted, defendant drove the victim 3.7 miles to a liquor store, a substantial distance. Moreover, his movement of the victim—from the grassy area near a relatively public setting into the isolation of his vehicle—decreased the likelihood of his detection and increased the risk of harm to the victim based on her foreseeable attempts to escape. Until defendant arrived at the store, the victim's only option to escape was to exit a moving vehicle. We conclude substantial evidence supports the aggravated kidnapping circumstance.

## 2.    The Jury's Findings as to the Kidnapping Circumstances[*]

In his second claim on appeal, defendant challenges the jury's true finding on the aggravated kidnapping circumstance and not true finding on the lesser included simple kidnapping circumstance. He contends double jeopardy precludes conviction of the greater circumstance where a defendant is found not guilty of a lesser included circumstance.

---

[*]See footnote, *ante*, page 1.

Defendant also asserts the jury's finding must be reversed because the trial court violated section 1161 by not determining the jury's true intent after reviewing the verdict forms. We are not persuaded by either argument.

Inconsistent verdicts are generally accepted as an occasional product of our criminal justice system. (*People v. Palmer* (2001) 24 Cal.4th 856, 860.) "[I]f an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both." (*People v. Santamaria* (1994) 8 Cal.4th 903, 911.) "The rule applies equally to inconsistent enhancement findings …." (*People v. Miranda* (2011) 192 Cal.App.4th 398, 405.) The "[justice] system accepts the possibility that 'the jury arrived at an inconsistent conclusion through "mistake, compromise, or lenity."'" (*People v. Guerra* (2009) 176 Cal.App.4th 933, 943.)

Although this principle is well-settled, defendant contends the jury's inconsistent verdicts violate the double jeopardy clause. The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15 of the California Constitution provide that a person may not be twice placed "in jeopardy" for the "same offense" after acquittal. Double jeopardy bars against prosecuting an individual for the same act after an acquittal or conviction. (*People v. Bright* (1996) 12 Cal.4th 652, 660, overruled on other grounds as stated in *People v. Seel* (2004) 34 Cal.4th 535, 550, fn. 6.)

Defendant argues his punishment for the aggravated kidnapping circumstance is prohibited under the double jeopardy clause because the jury found not true the lesser included simple kidnapping circumstance. However, defendant was tried but once, and he was not punished for the lesser included circumstance. As such, double jeopardy does not apply.

Defendant also contends the trial court violated section 1161 by failing to instruct the jury to reconsider its verdict on the inconsistent circumstance findings. Section 1161 provides, in relevant part: "When there is a verdict of conviction, in which it appears to

10.

the Court that the jury have mistaken the law, the Court *may* explain the reason for that opinion and direct the jury to reconsider their verdict …; but when there is a verdict of acquittal, the court cannot require the jury to reconsider it." (Italics added; see *People v. Carbajal* (2013) 56 Cal.4th 521, 530.)

According to the plain language of section 1161, a trial court has the right to direct a jury to continue deliberations, but it is not obligated to do so. Defendant fails to cite any authority imposing an affirmative obligation on the trial court to direct the jury to reconsider an inconsistent verdict. Although such a direction would have been prudent here, we find no reversible error from the court's failure to do so.

In *People v. Davis* (1988) 202 Cal.App.3d 1009, 1014-1015 (*Davis*), a jury found the defendant guilty of second degree murder, but not guilty of the lesser included offenses of voluntary and involuntary manslaughter. The jury was instructed on first degree murder, second degree murder, and voluntary and involuntary manslaughter. (*Id.* at p. 1014.) The trial court also instructed the jurors to consider the possible homicide verdicts in order of decreasing severity until they unanimously agreed on a guilty verdict, deadlocked at a level, or agreed on a not guilty verdict at all levels. (*Ibid*.)

The issue before this court was not jury reconsideration, but whether the inconsistent verdict amounted to reversible error. (*Davis*, *supra*, 202 Cal.App.3d at p. 1016.) This court characterized the jury's failure to follow the court's instruction as a technical error; the jurors mistakenly believed they had to complete all forms given to them, and signed the manslaughter verdicts rather than leaving them blank. (*Id.* at p. 1017.) The defendant did not challenge the sufficiency of the evidence of his second degree murder conviction, and he was not prejudiced as a result of the error. (*Ibid*.) As such, the court found no basis for reversal of the defendant's conviction. (*Ibid*.)

In *People v. Caird* (1998) 63 Cal.App.4th 578, 585-586 (*Caird*), the trial court sent the jury back to reconsider its verdict after the jury found the defendant guilty of a forcible lewd act, but not guilty of the lesser included offense of a nonforcible lewd act.

11.

The jury returned with the same finding. (*Id*. at p. 586.) The trial court polled jury members individually and determined the jury had intended to convict the defendant of the greater offense and, therefore, did not intend to reach a decision on the lesser included offense. (*Ibid.*) As a result, the trial court struck the jury's finding on the lesser included offense. (*Ibid.*)

On appeal, the defendant argued the trial court erred in sending the jury back to reconsider its not guilty verdict. (*Caird*, *supra*, 63 Cal.App.4th at pp. 585-586.) Under section 1161, trial courts are statutorily prohibited from directing juries to reconsider verdicts of acquittal. The *Caird* court held the jury was not asked to reconsider a not guilty finding, the trial court merely clarified the jury's intent as to the inconsistent verdict forms. (*Id*. at p. 588.) The court denied reversal, finding the jury's inconsistent verdict was a technical error, and further explained, technical defects may be disregarded where the jury's intent is unmistakably clear and the defendant is not prejudiced. (*Id*. at p. 589.)

Here, as in *Davis*, the issue is not one of jury reconsideration under section 1161. The trial court declined to exercise its judgment to direct the jury to reconsider its inconsistent finding on the aggravated kidnapping circumstance. In addition, we do not find the jury's verdicts to be so inconsistent as to require reversal.

Similar to *Davis* and *Caird*, the verdicts here appear to be merely a technical error. Although the trial court characterized the jury's inconsistent verdicts as an act of mercy, we need not speculate as to the cause of the error because the jury's intent is unmistakable from the record. During deliberations, the jury sent a note to the court to ask whether a unanimous vote had to occur to find the enhancements true or not true. The court responded affirmatively, and the jury found the aggravated kidnapping circumstance true. The trial court polled the jury individually and the verdict was affirmed by each member. Thus, the jury evidently intended to find the aggravated kidnapping circumstance true.

### 3. Defendant's Sentence on Count 3

Defendant contends the trial court was required to stay his sentence for simple kidnapping (§ 207, subd. (a)) on count 3 because he was also sentenced for the aggravated kidnapping circumstance on count 1. He contends his sentence is unauthorized under section 654 because he was punished twice for the same act of kidnapping. We agree.

Section 654, subdivision (a) provides the following, in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 applies where a single act violates more than one statute. (*Neal v. State of California* (1960) 55 Cal.2d 11, 20.) The purpose of the statute is to ensure a defendant's punishment is commensurate with his or her culpability. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.)

Our Supreme Court has held section 654 bars multiple enhancements punishing the same aspect of a criminal act. (*People v. Ahmed* (2011) 53 Cal.4th 156, 163-164 (*Ahmed*.)) With respect to enhancements going to the nature of the offense, i.e., conduct enhancements, the court explained resort to section 654 is necessary only when a specific sentencing statute does not provide an answer as to whether a crime may be punished under multiple provisions. (*Ahmed*, at pp. 162-163.)

Although section 667.61 is an alternative sentencing scheme rather than an enhancement (*People v. Acosta* (2002) 29 Cal.4th 105, 118), the aggravated kidnapping circumstance at issue here is functionally equivalent to a conduct enhancement because it focuses on the manner in which the underlying offense was committed, rather than on the status of the offender. In any event, the issue before this court is not whether the aggravated kidnapping circumstance (§ 667.61, subd. (d)(2)) was punished twice because defendant was not convicted of the substantive offense of aggravated kidnapping (§ 209).

13.

The issue is whether defendant was punished twice for the same act of simple kidnapping.

In the instant case, the prosecutor advised the jury during closing argument that defendant's act of driving the victim to the liquor store was the act supporting the aggravated kidnapping charge on count 3, as well as the aggravated kidnapping circumstances as to both counts 1 and 2. The jury found the aggravated kidnapping circumstance true as to count 1 and found defendant guilty of the lesser included offense of simple kidnapping as to count 3. The trial court sentenced defendant to an indeterminate term of 25 years to life on count 1, with a consecutive eight-year determinate sentence on count 3. Because the trial court did not stay defendant's sentence for simple kidnapping, he was punished twice for the same act in contravention of section 654.

The Attorney General contends section 654 does not apply and relies on *People v. Byrd* (2011) 194 Cal.App.4th 88, 91 (*Byrd*), a case presenting a similar issue to the instant case. In *Byrd*, the defendant argued the trial court erred when it sentenced him for forcible sodomy (§ 286, subd. (c)(2)) with an aggravated kidnapping circumstance (§ 667.61, subd. (d)(2)), but refused to stay his sentence for simple kidnapping (§ 207). The defendant argued that because the aggravated kidnapping circumstance and the simple kidnapping conviction were based on the same act of kidnapping, he was being punished twice. (*Byrd*, at p. 92.) The trial court refused to stay Byrd's sentence for simple kidnapping under section 654, finding the defendant's conduct established two separate objectives for the kidnapping. (*Byrd*, at pp. 96-97.)

The appellate court found no error. (*Byrd*, *supra*, 194 Cal.App.4th at p. 102.) The *Byrd* court held section 667.61, subdivision (f) was controlling, not section 654. (*Byrd*, at p. 97.) Subdivision (f) provides, in part, if only the minimum number of qualifying circumstances required for one strike sentencing has been pled and proved, that circumstance must be used as the basis for imposing the one strike term, to the exclusion

14.

of any other provision of law, unless another provision provides for a greater punishment. Because Byrd was punished for aggravated kidnapping under the One Strike law and not simple kidnapping, his sentence for the substantive offense of simple kidnapping was not prohibited under section 667.61, subdivision (f).

The *Byrd* court explained aggravated kidnapping (§ 667.61, subd. (d)(2)) and simple kidnapping (§ 667.61, subd. (e)(1)) are distinct circumstances. (*Byrd*, *supra*, 194 Cal.App.4th at p. 101.) The court also noted the statutory language of aggravated kidnapping (§ 209) prohibits punishment under both section 209 and section 667.61 for the same act; whereas simple kidnapping under section 207 contains no such prohibition. (*Byrd*, at p. 102.) From the absence of this language, the court inferred Byrd could be punished for kidnapping under section 207 and aggravated kidnapping under section 667.61, subdivision (d)(2). (*Byrd*, at p. 102.)

We disagree with the reasoning in *Byrd* for several reasons. First, we do not read section 667.61, subdivision (f) to circumvent application of section 654 under the facts in *Byrd*. In finding subdivision (f) of section 667.61 controlling, rather than section 654, *Byrd* found instructive our Supreme Court's decision in *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*). (*Byrd*, *supra*, 194 Cal.App.4th at p. 98.) However, the *Mancebo* case had nothing to do with the staying of punishment or section 654.

The issue before the court in *Mancebo* was whether a gun use circumstance was available to support two section 12022.5, subdivision (a) enhancements when the gun use was pled and proven as the only basis for sentencing under the One Strike law. (*Mancebo*, *supra*, 27 Cal.4th at p. 738.) Under former section 667.61, subdivision (f),

> "[i]f only the minimum number of circumstances specified in subdivision (d) or (e) which are required for the punishment provided in subdivision (a) or (b) to apply have been pled and proved, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a) or (b) rather than being used to impose the punishment authorized under any other law, unless another law provides for a greater penalty. However, if any additional circumstance or circumstances specified in subdivision (d) … have been pled and proved, the minimum

15.

number of circumstances shall be used as the basis for imposing the term provided in subdivision (a), and any other additional circumstance or circumstances shall be used to impose any punishment or enhancement authorized under any other law."

A circumstance is pled and proved under section 667.61 if it is alleged "in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." (Former § 667.61, subd. (i).) In *Mancebo*, both the original and amended information failed to allege a multiple victim circumstance under section 667.61, subdivision (e)(5). (*Mancebo*, *supra*, 27 Cal.4th at p. 745.) As such, the gun use was the only circumstance pled and proved under section 667.61, subdivision (f). (*Mancebo*, at p. 745.) Since the other gun use enhancements did not provide for greater punishment than the One Strike law, the act could only be punished under the One Strike law. (*Mancebo*, at pp. 743-744.)

The *Byrd* court found *Mancebo* factually distinguishable but, nonetheless, instructive.[2] (*Byrd*, *supra*, 194 Cal.App.4th at p. 98.) We agree *Mancebo* is factually distinguishable, but we do not agree *Mancebo* was instructive.

In *Mancebo*, subdivision (f) of section 667.61 required the gun use circumstance to be applied exclusively to the One Strike law. (*Mancebo*, *supra*, 27 Cal.4th at pp. 743-744.) As such, recourse to section 654 was unnecessary. We fail to see how section 667.61, subdivision (f) governed the court's analysis in *Byrd*. The issue before the court

_____

[2]The *Byrd* court's premise, i.e., that *Mancebo*'s reasoning is instructive on the issue of section 654, is perplexing to say the least. The court stated: "We note that in reaching its decision, our Supreme Court relied entirely on the 'plain wording' of subdivision (f) and various other provisions of section 667.61, as discussed *post*, and not on section 654, subdivision (a), in determining that the 10-year term for personal gun use should have been stayed. (See *People v. Mancebo*, *supra*, 27 Cal.4th at p. 743.)" (*Byrd*, *supra*, 194 Cal.App.4th at pp. 98-99.) However, the gun use enhancements were ordered stricken, not stayed, by the Court of Appeal. Neither party urged that any punishment imposed on the gun use enhancements should have been stayed. In affirming the Court of Appeal, the Supreme Court agreed the gun use enhancements were "improperly imposed" by the trial court "in contravention of the provisions of section 667.61, subdivision (f). Those enhancements were therefore properly ordered stricken, and the One Strike sentence otherwise properly affirmed." (*Mancebo*, *supra*, 27 Cal.4th at p. 754.)

Because *Byrd*'s analysis began from an erroneous premise, the remaining analysis became foundationally flawed.

was not whether the aggravated kidnapping circumstance (§ 667.61, subd. (d)(2)) was punished twice under multiple provisions of the law, because it was not. The issue was whether Byrd's act of simple kidnapping was punished twice.

Second, *Byrd* noted section 667.61 distinguishes between aggravated and simple kidnapping. (*Byrd*, *supra*, 194 Cal.App.4th at p. 101.) The simple kidnapping circumstance (§ 667.61, subd. (e)(1)) statutorily references the substantive offense of simple kidnapping as one of its qualifying circumstances:

> "(e) The following circumstances shall apply to the [sex] offenses specified in subdivision (c):

> "(1) Except as provided in paragraph (2) of subdivision (d), the defendant kidnapped the victim of the present offense in violation of *Section 207 [simple kidnapping]*, 209 [kidnapping for intent to commit rape], or 209.5 [kidnapping during the commission of a carjacking]." (§ 667.61, italics added.)

While aggravated and simple kidnapping are, indeed, distinct subdivisions under section 667.61, aggravated kidnapping cannot be demonstrated unless the People prove the defendant *kidnapped* the victim of the proscribed sex offense. (See CALCRIM No. 3175.) Section 667.61, subdivision (d)(2) and section 207 both require the People prove the defendant (1) took, held, or detained another person by using force or instilling reasonable fear; and, (2) moved the victim a substantial distance, i.e., a distance more than incidental to the underlying offense. The aggravated kidnapping circumstance has the additional requirement the movement of the victim substantially increased the risk of harm to him or her necessarily present in the underlying sex offense.

Assuming only one act of kidnapping was punished in *Byrd* under both the aggravated kidnapping circumstance and section 207, that would mean the defendant was punished twice for the same act. In proving simple kidnapping (§ 207), the People necessarily proved all but one element of the aggravated kidnapping circumstance (§ 667.61, subd. (d)(2)) based on the same set of facts.

17.

*Byrd* also noted simple kidnapping (§ 207) and aggravated kidnapping (§ 209) are distinguishable in that section 209 expressly prohibits punishment for an act that also falls under section 667.61, and subdivision (b) of section 209; whereas, section 207 contains no such prohibition. (*Byrd*, *supra*, 194 Cal.App.4th at p. 102.) Subdivision (b)(1) of section 209 punishes kidnapping with the intent "to commit robbery, rape, spousal rape, oral copulation, sodomy, or any violation of Section 264.1, 288, or 289." Section 209, subdivision (d) prohibits punishment for the same act that violates both subdivision (b) of section 209 and section 667.61.

We are not persuaded the absence of a similar provision in section 207 supports the inference an individual may be punished for simple kidnapping (§ 207) and an aggravated kidnapping circumstance (§ 667.61, subd. (d)(2)) based on the same act. In reaching the conclusion section 654 does not apply because section 209 prohibits double punishment and section 207 does not do so expressly, the *Byrd* court has turned the appropriate analysis on its head.

It is precisely because section 207 neither prohibits double punishment nor requires double punishment that the court must turn to section 654 to determine whether the sentence should be stayed under the facts and circumstances of the case. As to section 209, resort to a section 654 analysis is unnecessary because, as previously noted, courts must first look to the provisions of the statute to determine the appropriate sentence or punishment. Section 209 does not mandate additional punishment but does foreclose it in certain circumstances, such as where section 667.61 applies. When those circumstances are present, the statute itself provides the answer, thereby rendering section 654 irrelevant. On the other hand, since section 207 does not specifically prohibit imposition of a sentence under any specified circumstances, section 654, the more general statute, fills that void. "Only if the specific statutes do not provide the answer should the court turn to section 654." (*Ahmed*, *supra*, 53 Cal.4th at p. 163.)

Finally, the *Byrd* court held the plain language of subdivision (f) of section 667.61 indicated the focus was on circumstances, rather than on underlying acts. (*Byrd*, *supra*, 194 Cal.App.4th at p. 102.) The *Byrd* court explained section 667.61, subdivision (f) uses the words "that circumstance" or "those circumstances," as opposed to the word "act" or "omission" used by section 654. (*Byrd*, *supra*, at p. 102.)

We do not agree with the appellate court's finding subdivision (f) of section 667.61 circumvented section 654 under the facts presented in *Byrd*. The aggravated kidnapping circumstance pled and proven in *Byrd* was not punished under any other provision of the law, other than the One Strike law; thus, subdivision (f) of section 667.61 was not dispositive of the issue before the court.

Moreover, section 654's use of the words "act" and "omission" does not mean circumstances—which focus on how a crime is committed—are exempt from the statute. As our Supreme Court noted in *Ahmed*, "section 654 bars multiple punishment for the same *aspect* of a criminal act." (*Ahmed*, *supra*, 53 Cal.4th at p. 164.) Based on the foregoing, we do not find *Byrd* persuasive and we decline to follow its reasoning. *Byrd*'s interpretation essentially writes section 654 out of the law.

*Byrd* is also factually distinguishable from the instant case. As a fallback argument, the appellate court explained in a footnote that if section 654 did, in fact, apply, the court would still affirm the sentence because the trial court found two distinct acts of kidnapping had occurred. (*Byrd, supra*, 194 Cal.App.4th at p. 102, fn. 9.) A defendant may be punished multiple times for the same act without violating section 654 under specific circumstances. For example, if there are multiple victims (*People v. Martin* (2005) 133 Cal.App.4th 776, 781-782), if the act is committed with different criminal objectives (*People v. Alvarado, supra*, 87 Cal.App.4th at p. 196), or if a series of acts are committed within a period of time during which reflection was possible (*People v. Surdi* (1995) 35 Cal.App.4th 685, 689), section 654 does not apply.

19.

These circumstances are inapplicable here where there was one victim, no evidence of separate and distinct objectives and, as discussed, the same act of kidnapping was relied upon to support both the aggravated kidnapping circumstance and the simple kidnapping conviction. Nonetheless, we have laid out what we believe is the appropriate analysis, especially in light of cases decided after *Byrd*, such as *Ahmed*. The bottom line, we think, is that the *Byrd* decision got it wrong.

We are aware of decisions following *Ahmed* where an enhancement and a substantive offense—both based on the same act—were found not to contravene section 654, such as *People v. Dydouangphan* (2012) 211 Cal.App.4th 772 (*Dydouangphan*) and *People v. Calderon* (2013) 214 Cal.App.4th 656 (*Calderon*). These cases are distinguishable and do not compel a similar result here.

In *Dydouangphan*, the defendant shot at an occupied vehicle, resulting in the death of one of the occupants. The defendant was convicted of voluntary manslaughter (count 1), assault with a firearm (count 2), and shooting at an occupied vehicle (count 3). (*Dydouangphan*, *supra*, 211 Cal.App.4th at p. 779.) In addition, two enhancements were imposed, one of which was the defendant personally discharged a firearm resulting in great bodily injury or death as to count 3. (*Id*. at pp. 779, 786.) The defendant argued, in part, section 654 applied because his conviction for voluntary manslaughter punished him for the death of the victim, but this same act was already punished by the enhancement for personally discharging a firearm resulting in the death of the victim. (*Dydouangphan*, at pp. 781-782.) This court rejected the defendant's argument, explaining the enhancement punished a specific aspect of the crime, the defendant's personal use of a firearm that caused death; whereas, voluntary manslaughter punished the victim's death. (*Id*. at p. 785.)

In *Calderon*, the defendant stole a vehicle and attempted to run over the owner of the vehicle as he fled. (*Calderon, supra*, 214 Cal.App.4th at p. 659.) He was convicted of carjacking, among other substantive offenses. (*Id*. at p. 661.) The jury found true an

20.

enhancement that the defendant personally used a deadly and dangerous weapon—the automobile—in the commission of the carjacking. (*Ibid*.) The defendant argued he was punished twice for the same act of driving at the victim with the vehicle, and the enhancement should have been stayed under section 654. (*Calderon*, at p. 661.) The appellate court disagreed, finding the enhancement punished the defendant's use of a deadly weapon during the commission of a carjacking, while the substantive offense punished the criminal act of carjacking. (*Id*. at p. 665.)

In both *Dydouangphan* and *Calderon* the enhancements at issue punished aspects of the crime distinct from the substantive offenses. Both enhancements punished the *method* in which the crime was accomplished, while the substantive offense punished the crime itself. In the instant case, the aspect of the crime punished by the aggravated kidnapping circumstance is kidnapping, however, count 3 punishes the same act of kidnapping.

In addition, both *Dydouangphan* and *Calderon* echo a concern expressed in *Ahmed* that a literal application of section 654 would effectively eliminate enhancements and reduce punishment, because an enhancement and an underlying offense *always* involve the same act. (*Calderon, supra*, 214 Cal.App.4th at p. 667, quoting *Dydouangphan, supra*, 211 Cal.App.4th at p. 785 ["'literal application of section 654 would result in a bar to imposition of any sentence enhancement'"].)

However, the "enhancement" at issue here—the One Strike law—contains an express provision precluding such a result. Pursuant to subdivision (f) of section 667.61, if only the minimum number of circumstances are pled and proved for application of the One Strike law, that circumstance must be applied to the One Strike law "unless another provision of law provides for a greater penalty or the punishment under another provision of law can be imposed in addition to the punishment provided by [the One Strike law]." This provision reflects the Legislature's intent to punish serious sex offenders more severely by mandating the greatest penalty possible. Thus, the concern expressed in

21.

*Dydouangphan* and *Calderon* does not apply here because section 654 would not eliminate punishment under the One Strike law.

Based on the foregoing, *Dydouangphan* and *Calderon* are distinguishable from the instant case. Defendant was punished twice for the same act of driving the victim to the liquor store, and the trial court erred in refusing to stay his sentence for simple kidnapping on count 3. The correct procedure would have been to impose a sentence on count 3, but then stay execution of the sentence. We will order the abstract of judgment amended consistent with this opinion.

## DISPOSITION

The trial court is ordered to prepare an amended abstract of judgment with service to all appropriate agencies to reflect the following modification: Defendant's sentence as to count 3 is stayed pursuant to section 654.

In all other respects, the judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
HILL, P.J.


_____
LEVY, J.

22.